ZEMEL, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents.

*May 6—June 7, 1949.*

For the appellant there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *Henry H. Otjen*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan*.

For the respondents Irving Sanvold and Employers Mutual Liability Insurance Company there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Norman C. Skogstad* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb*.

WICKHEM, J.    For five or six years Irving Sanvold owned a farm outside the city of Fort Atkinson.    He resided on this farm and adjacent to his home had a large building containing four large rooms.    In addition there was a garage for trucks. In these buildings Sanvold operated an egg and hatchery business, had employees in this business and gathered eggs on the territory around the farm, candled them, and prepared them for the Chicago market.    He had more than enough employees to bring him under the Workmen's Compensation Act and had a workmen's compensation insurance policy from defendant, Employers Mutual Liability Insurance Company. The largest number of his employees were truck drivers engaged in collecting eggs and in transporting them to the market in Chicago after they had been processed.    Other workers on the farm aided in candling and packing the eggs and an office clerk kept the records of the business.    The business was operated under the name of "Riverside Farms" for a time and later under the name of "Riverside Farm and Hatchery." In the course of his business Sanvold became acquainted with Ben Zemel and ultimately negotiations between Zemel and Sanvold resulted in a conditional sales contract by which Sanvold sold to Zemel his wholesale egg business.    This condi-

tional sales contract was entered into on March 31, 1947. The contract provided that, "The buyer shall have the privilege of using the name Riverside Farm in the conduct of the business. . . ." The price of the business was $26,000, $1,000 down, the remainder to be paid in two years out of the operation of the business by the process of Zemel paying Sanvold one-half cent per dozen of eggs purchased by Zemel. The contract provided for a weekly accounting and that the business be carried on at the same place that Sanvold conducted it, title to all the business and equipment to remain in Sanvold until the full purchase price was paid. Zemel made no attempt to obtain workmen's compensation insurance. It is claimed by appellant that there was no notification to the public regarding the change of ownership and that the workmen were not told of the change. There was evidence, however, that Zemel gave information to the employees that Zemel was the employer after the date of the contract and that Sanvold introduced him to several of the employees and stated that Zemel would be running the business.

William Reinsel, the employee for whose fatal injuries this proceeding was brought, was actually hired by Zemel and had never worked for Sanvold. After the sale Sanvold retained the hatchery business which he operated under the name of the "Riverside Hatchery," leaving to Zemel the operation of the wholesale egg business, under the name of "Riverside Farms." The parties carried separate bank accounts but had one common employee and office clerk who was paid full time by Zemel but also paid by Sanvold in case she did work for him. She kept separate books and worked for Sanvold only when he required her services. On July 8, 1947, Reinsel who had been hired by Zemel was killed while driving a Riverside Farm truck to Chicago. There had been no formal assignment of compensation insurance policy from Sanvold to Zemel. It was held by the Industrial Commission that since there had been no formal assignment of the workmen's compensation

policy Zemel's employees were not covered by it and that the liability was solely Zemel's.

It is contended by appellant: (1) That the public policy of the state requires that there be certainty that an injured workman secure compensation; (2) that an insurance carrier who issues a policy adopts the purposes and objects of the act and assumes the duties and obligations of an employer toward an injured workman; (3) that it is the public policy of the state that a policy is designed to protect the workers from the hazards of the business covered by the policy whoever may be the manager of the business; (4) that the worker for this reason is given a definite personal right in the insurance by the state and by the terms of the policy; (5) that the legal meaning and effect of the conditional sales contract must be interpreted from the point of view of the worker and the protection of his rights.

It is argued that we have here a financially strong employer carrying a policy protecting his workmen; that without any knowledge on the part of the public or the employee this employer enters into a conditional sales contract with a financially weak buyer who made no attempt to take out compensation insurance; that under such circumstances the purchaser under the conditional sales contract must be treated as hardly more than a new manager for the identical business covered by the policy and that the seller should be treated as continuing as the real owner of the business and employer of the workers; that under these circumstances the policy which he took and paid for and which was originally designed to cover the employees who were operating trucks in the wholesale egg business should be treated as continuing to cover the business conducted by Zemel.

There are several reasons why these contentions cannot be sustained. There is no claim that the conditional sales contract was colorable and if it was not it put the ownership of the business in Zemel with a mere retention of the title in San-

vold for security purposes. The employees actually and not colorably became Zemel's employees. Zemel became an employer subject to the compensation act and in equity and substance the owner of the business. Indeed, the decedent was never an employee of Sanvold but was hired by Zemel. Zemel did not insure his liability under the compensation act, nor did he obtain assignment of the policy taken out by Sanvold which covered Sanvold's liability but not that of anybody else. We are cited no authority to the effect that when Zemel purchased the business he automatically acquired any protection from the compensation policy of his predecessor in interest and there is no possibility of creating insurance by estoppel; certainly, the insurance company was not guilty of any act which could be the basis of an estoppel. On the latter point see *Maryland Casualty Co. v. Industrial Comm.* 230 Wis. 363, 284 N. W. 36.

We conclude that Zemel is liable in compensation for the injuries and death of Reinsel; that Sanvold is not so liable; and that there is no coverage by Sanvold's insurer. It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

BROADFOOT, J., took no part.